IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01387-PAB-KAS

DEAN CARBAJAL,

      Plaintiff,

v.

JAMES FALK,
ANTHONY PIPER,
MICHAEL MCCALLUM,
JEREMY KAHN,
TIFFANY GOSSETT,
BLAS TORREZ, and
JOSE CONTRERAS,

      Defendants.

---

**ORDER**

---

      This matter comes before the Court on the Amended Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50 or Alternatively Motion for New Trial Pursuant to Fed. R. Civ. P. 59 [Docket No. 340].

## I.   BACKGROUND

      Plaintiff Dean Carbajal and two other plaintiffs, Luis Leal and Victoria Carbajal, initiated this lawsuit on May 14, 2019.  Docket No. 1.  The complaint asserted a variety of claims against many defendants under 42 U.S.C. § 1983, 28 U.S.C. § 1367, 42 U.S.C. § 12203, and 29 U.S.C. § 701.  *Id.* at 44-57.  On March 29, 2021, the Court accepted in part and rejected in part then-Magistrate Judge Nina Y. Wang's recommendation on defendants' motion to dismiss and plaintiffs' motion to amend the

complaint.  Docket No. 118 at 19-20.  As a result, the Court dismissed Ms. Carbajal and

Mr. Leal and dismissed Mr. Carbajal's claims except for his claim for failure to protect in

violation of the Eighth Amendment.  *Id.* at 15-20.  Mr. Carbajal's failure to protect claim

was based on two incidents in which Mr. Carbajal alleged that, while he was an inmate

in the Limon Correctional Facility ("Limon") of the Colorado Department of Corrections

("DOC"), he was attacked by members of the Paisa gang in retaliation for revealing the

gang's plot to kill a guard.  *Id.* at 17-20; Docket No. 119 at 7-9; Docket No. 320 at 14-16,

18-19.  At the time of trial, the remaining defendants were James Falk, Eugene

Redman, Gregory Smith, Anthony Piper, Michael McCallum, Jeremy Kahn, Tiffany

Gossett, Blas Torrez, Chance Torres, Jose Contreras, and Larry Winegardner.  *See*

Docket Nos. 118, 258, 261, 262, 303.

The trial began on July 29, 2024.  Docket No. 313.  At the time of trial, Mr.

Carbajal was an inmate at the DOC's Colorado Territorial Correctional Facility.  The

Court granted Mr. Carbajal's request to attend the trial in person, *see* Docket No. 296 at

1, dressed in civilian clothing.  Two uniformed officers from the DOC were in the

courtroom.  Mr. Carbajal did not object to their presence.  Mr. Carbajal had shackles on

his legs and on his hands during jury selection, although before opening statements the

Court granted his request to have his writing hand be free from restraint.

On the first day of trial, Mr. Carbajal requested that the Court allow him to be

unrestrained during the trial.  The Court denied the request, noting that (a) the jury

would not be prejudiced by his restraints because they would already know from the

nature of Mr. Carbajal's claim that he was a prisoner, (b) it was a protocol of the United

States Marshals Service to restrain prisoners, at least during hearings, and (c) given

that Mr. Carbajal, as the plaintiff, was seated very near to the jury.[1]  In explaining its reasoning, the Court noted that violent incidents involving prisoners have occurred in courthouses in recent years, which involved sudden actions without warning.

On the second day of trial, defense counsel informed the Court, outside the presence of the jury, that defendant Blas Torrez was suffering from significant health issues and requested that Mr. Torrez be permitted to testify remotely.  The Court granted the request.

On the third day of trial, July 31, 2024, Mr. Carbajal rested his case-in-chief.  Docket No. 315 at 2.  Defendants moved orally for judgment as a matter of law in favor of all defendants pursuant to Federal Rule of Civil Procedure 50(a).  *Id.*  The Court granted defendants' motion as to Mr. Redman and Mr. Winegardner.  *Id.* at 3.  At that time, Mr. Carbajal voluntarily dismissed defendants Chance Torres and Gregory Smith.  *Id.* at 2.

On the morning on the fourth day of trial, defense counsel informed the Court that, although he intended to call Mr. Torrez to testify remotely, he had recently received information that Mr. Torrez was on the way to the hospital.  That afternoon, defense counsel informed the Court that Mr. Torrez, as far as he knew, was on his way to the hospital in distress and requested that Mr. Torrez be permitted to testify on the fifth day of trial, Monday, August 5, 2024.  The Court approved this change of schedule.  The Court informed the jury that Mr. Torrez was going to be testifying by video because of

---

[1] During the trial, Mr. Carbajal sat to the right of his attorney, who was at the end of the table facing the bench.  Mr. Carbajal did not request that a skirt be placed around the table.  The Court also noted that Mr. Carbajal could have appeared, unrestrained, via video teleconference from Colorado Territorial Correctional Facility, but that by appearing in person there were some tradeoffs in terms of security precautions.

some health issues, but that those health issues prevented him from testifying until Monday.

There was no trial on Friday, August 2, 2024. However, on that day, defendants filed a Notice of Death stating that defendant Blas Torrez died on August 1, 2024. Docket No. 317 at 1. On Monday, August 5, 2024, before the jury was brought in, the Court and the parties discussed Mr. Torrez's death and its implications for the trial. The Court suggested that the parties could either stipulate that Mr. Torrez had died or the Court, rather than mentioning his death, could simply inform the jury that Mr. Torrez was still unable to testify. Mr. Carbajal indicated that he would prefer the second option and defendants indicated that they would prefer the first. The Court decided that it would tell the jury only that Mr. Torrez was unable to testify, without informing them that Mr. Torrez had died, in order to avoid a sympathy issue. The Court also asked the parties whether they wished to leave Mr. Torrez's name in the paragraphs of the verdict form where the jury was asked to consider punitive damages, given that punitive damages do not survive the death of a party under Colorado law. *See* Colo. Rev. Stat. § 13-20-101(1). Defendants stated that they preferred to remove Mr. Torrez's name from the punitive damages sections, and Mr. Carbajal stated that he preferred to leave it in. The Court decided to remove Mr. Torrez's name from the punitive damages sections. In addition, Mr. Carbajal orally moved to substitute the estate of Mr. Torrez for Mr. Torrez as a defendant. The Court denied the motion because, under Federal Rule of Civil Procedure 25(a)(1), Mr. Carbajal had 90 days after service of a statement noting Mr. Torrez's death to file a motion for substitution and because Mr. Carbajal had not

demonstrated that he had taken the steps required by Rule 25 to substitute a party. *See* Fed. R. Civ. P. 25(a)(1), (3).

After the jury was brought in, the Court stated to the jury, "you will recall that on Thursday we ended a little bit early because Mr. Torrez was unavailable.  Mr. Torrez is still unavailable."  Defendants rested their case and Mr. Carbajal presented a rebuttal case.  Docket No. 319 at 1-2.  After the close of evidence, defendants renewed their motion for judgment as a matter of law pursuant to Rule 50 in favor of Mr. Falk, Mr. McCallum, Mr. Contreras, Mr. Piper, and Mr. Kahn.  *Id.* at 2.  The Court denied the renewed motion.  *Id.*  Mr. Carbajal did not make any Rule 50 motions during the trial.

The afternoon of August 5, 2024 the jury returned a verdict in favor of all defendants on Mr. Carbajal's claim.  Docket No. 324.  On August 7, 2024, the Court entered final judgment in favor of defendants James Falk, Eugene Redman, Anthony Piper, Michael McCallum, Jeremy Kahn, Tiffany Gossett, Blas Torrez, Jose Contreras, and Larry Winegardner and against Mr. Carbajal.  Docket No. 326 at 1.

## II.   MOTION FOR JUDGMENT AS A MATTER OF LAW

Mr. Carbajal's motion asks the Court to enter judgment as a matter of law against Mr. Torrez pursuant to Rule 50(b)(3).[2]  Docket No. 340 at 5-8.

Federal Rule of Civil Procedure 50(b) states:

If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of

---

[2] It is unclear whether Mr. Carbajal also seeks judgment as a matter of law against the other defendants.

law and may include an alternative or joint request for a new trial under Rule 59.
In ruling on the renewed motion, the court may:

    (1) allow judgment on the verdict, if the jury returned a verdict;

    (2) order a new trial; or

    (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). The Tenth Circuit has held that "[a]rguments presented in a Rule 50(b) motion cannot be considered if not initially asserted in a Rule 50(a) motion." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017) (citing *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1266 (10th Cir. 2016); *see also Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1131 (10th Cir. 2019) ("A party can renew its motion for judgment as a matter of law under Rule 50(b) after the jury returns a verdict . . . . A Rule 50(b) movant, however, can only reassert the same grounds for judgment as a matter of law that he first asserted in his pre-deliberation Rule 50(a) motion."); *Brothers v. Johnson*, 105 F.4th 1279, 1283 (10th Cir. 2024). Mr. Carbajal did not move for judgment as a matter of law against Mr. Torrez pursuant to Rule 50(a) before the case was submitted to the jury. Because "[c]ompliance with Rule 50 is mandatory," *Mountain Dudes*, 946 F.3d at 1131 (citations and quotation omitted), Mr. Carbajal's failure to seek judgment against Mr. Torrez under Rule 50(a) forecloses his ability to seek judgment against Mr. Torrez under Rule 50(b). The Court will deny that portion of Mr. Carbajal's motion that seeks judgment as a matter of law on his claim against defendant Torrez or the other defendants.

## III.   MOTION FOR A NEW TRIAL

Federal Rule of Civil Procedure 59(a) provides that "[t]he Court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court." Fed. R. Civ. P. 59(a)(1)(A). A motion for a new trial may be granted where "the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1297 (10th Cir. 1998)).

Mr. Carbajal argues that he is entitled to a new trial on six grounds: (1) the fact that the Court required Mr. Carbajal to wear restraints during the trial prejudiced the jury against him because it led the jury to believe he was violent and dangerous; (2) the Court impermissibly delegated the decision to require Mr. Carbajal to wear restraints to the U.S. Marshals Service and the Colorado Department of Corrections ("DOC"); (3) the verdict in favor of Mr. Torrez was against the weight of the evidence; (4) the Court lacked subject matter jurisdiction to enter final judgment in favor of Mr. Torrez; (5) the jury was prejudiced by the indirect presentation of evidence of Mr. Torrez's death; and (6) statements concerning Mr. Carbajal's prior lawsuits, the length of Mr. Carbajal's sentence, prior offenses, and a "false conviction for a sex offense" prejudiced the jury against Mr. Carbajal. Docket No. 340 at 8-14.

### A. Use of Restraints

Mr. Carbajal appears to argue that the Court erred by requiring him to wear restraints during the trial because: (1) seeing Mr. Carbajal in restraints prejudiced the jury against him; and (2) the Court impermissibly delegated the decision to shackle Mr. Carbajal to the U.S. Marshals Service and the DOC. *Id.* at 13-14.

#### 1. Prejudice

Mr. Carbajal argues that requiring him to be restrained during the trial prejudiced him before the jury because the "use of handcuffs and leg irons suggested to the jury

that the plaintiff was dangerous and violent and thus unworthy of being protected from gang violence." *Id.* at 14.

The Tenth Circuit has not addressed the question of whether the plaintiff in a civil case is prejudiced by the jury seeing him in restraints during trial.[3] However, other courts of appeals have found that, in civil cases brought by prisoners under the Eighth Amendment, juries were not prejudiced by seeing prisoners in restraints in the courtroom because, due to the nature of the plaintiffs' claims, the juries were aware that the plaintiffs were prisoners. *See Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992) (holding that the shackles worn by plaintiff "added nothing to the trial that was not already apparent from the nature of the case"); *Woods v. Thieret*, 5 F.3d 244, 249 (7th Cir. 1993) ("the shackles could not have resulted in prejudice because the jury was well aware of the fact that the witnesses were inmates in a maximum security prison"); *see also Estelle v. Williams,* 425 U.S. 501, 507 (1976) ("No prejudice can result from seeing that which is already known.") (quoting *United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973)). Here, the nature of Mr. Carbajal's claim – that the DOC did not protect him from assaults by other inmates – made it obvious to the jury that he was a current inmate of the DOC.[4]

---

[3] In *Mitchell v. Maynard*, 80 F.3d 1433, 1438, 1446 (10th Cir. 1996), plaintiff claimed that the trial court erred by refusing to remove his shackles and leg irons during trial, but the Tenth Circuit found that "any claim made by Mr. Mitchell based on prejudice the shackles may have instilled in the jury is moot because the jury did not decide Mr. Mitchell's claims" since the trial court granted defendants judgment as a matter of law pursuant to Rule 50(a) prior to jury deliberation.

[4] Mr. Carbajal does not argue that, if he was not restrained, the jury would not have known he was still in prison.

Some courts of appeals have held that requiring a prisoner plaintiff to be visibly shackled during the trial may prejudice the jury in civil cases where the plaintiff's dangerousness or flight risk are central issues at the trial.  *See Claiborne v. Blauser*, 934 F.3d 885, 890 (9th Cir. 2019) ("Because the inmate's dangerousness and flight risk were central issues at the trial, the district court plainly erred in allowing him to be visibly shackled without any showing of a sufficient need for such restraints."); *Lemons v. Skidmore*, 985 F.2d 354, 359 (2nd Cir. 1993) (holding that, in a case where plaintiff alleged excessive force by corrections officers, visibly shackling plaintiff during trial "undoubtably prejudiced" the jury because "[t]he use of handcuffs and leg irons [during trial] suggested to the jury that the plaintiff was dangerous and violent, so that whatever force the guards had used was probably necessary, and not excessive").  However, where a prisoner plaintiff's dangerousness or flight risk is not central to his claim, shackling the plaintiff during trial does not invite the same kind of prejudice.  *See Garcia v. Cluck*, 826 F. App'x 606, 609 (9th Cir. 2020) (holding that the trial court did not err in requiring a prisoner plaintiff to be shackled during trial because "the only claims before the jury were Garcia's First Amendment retaliation claims, and Garcia's dangerousness was not at issue").

Here, there was one claim before the jury – failure to protect Mr. Carbajal from attack by other inmates in violation of the Eighth Amendment.  The Court instructed the jury that, in order to prevail on his Eighth Amendment claim against a given defendant, Mr. Carbajal was required to prove the following elements by a preponderance of the evidence:

First: Mr. Carbajal faced a substantial risk of serious harm as a result of being attacked by another prisoner in retaliation for exposing a plot to kill a guard;

> Second: defendant actually knew of the risk of serious harm to Mr. Carbajal as a result of being attacked by another prisoner in retaliation for exposing the plot to kill a guard;
> Third: defendant disregarded that risk or failed to take reasonable measures to protect Mr. Carbajal in response to that risk;
> Fourth: Mr. Carbajal was attacked by another prisoner in retaliation for exposing the plot to kill a guard;
> Fifth: defendant's deliberate indifference to the risk of serious harm to Mr. Carbajal as a result of being attacked by another prisoner in retaliation for exposing the plot to kill a guard caused Mr. Carbajal's injuries and the injuries were a reasonably foreseeable consequence of defendant's deliberate indifference; and
> Sixth: defendant was acting under color of state law.

Docket No. 320 at 14-15; *see also Howard v. Waide*, 534 F.3d 1227, 1236-40 (10th Cir. 2008) (describing the elements of an Eighth Amendment failure to protect claim). None of these elements required the jury to consider Mr. Carbajal's dangerousness.[5]

Moreover, the Court instructed the jury that, "[u]nder the Eighth Amendment to the United States Constitution, every person convicted of a crime has the right not to be subjected to cruel and unusual punishment." Docket No. 320 at 14. The Court also instructed the jury to "consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons stand equal before the law and are to be treated as equals."

---

[5] Mr. Carbajal's argument that the use of restraints during trial "suggested to the jury that the plaintiff was dangerous and violent and thus unworthy of being protected . . . so that whatever failure to protect was probably necessary, and not unreasonable" *see* Docket No. 340 at 14, appears to be a reference to *Lemons*, in which the court found that "[t]he use of handcuffs and leg irons suggested to the jury that the plaintiff was dangerous and violent, so that whatever force the guards had used was probably necessary, and not excessive." *Lemons*, 985 F.2d at 359. However, *Lemons* is distinguishable from this case because it concerned a prisoner's excessive force claim. Moreover, while a jury's perception that a prisoner is dangerous and violent could plausibly lead a jury to believe it was necessary for a defendant to use a given amount of force against the prisoner, it is not clear why a jury's perception that a prisoner is dangerous and violent would lead the jury to believe that it was justified to fail to protect the prisoner.

*Id.* at 11.  Thus, the jury was instructed that all prisoners – even dangerous and violent prisoners – have the right to be protected from serious harm under the Eighth Amendment and instructed to consider Mr. Carbajal as a person of equal worth to defendants.  "A jury is presumed to follow its instructions," *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and these instructions run contrary to the idea that Mr. Carbajal "was dangerous and violent and thus unworthy of being protected."  *See* Docket No. 340 at 14.  Because Mr. Carbajal's dangerousness was not at issue in the trial and because the jury received instructions contrary to the notion that Mr. Carbajal was not worthy of being protected, the Court finds that the jury was not prejudiced against Mr. Carbajal because he was visibly shackled during the trial.

### 2.  Delegation

Mr. Carbajal argues that the Court impermissibly "delegated the decision" of whether Mr. Carbajal should be restrained during trial to the U.S. Marshals Service and the DOC.  *Id.* at 13-14.  He claims that the Court "did not give any individual consideration to this issue" and that the Court "stated that since the Plaintiff was in custody, [the Court] would leave the decision entirely in the hands of the Marshals."  *Id.* at 13.

The Court did not delegate the decision to restrain Mr. Carbajal to the U.S. Marshals Service or the DOC.  Rather, the Court noted the general policy of requiring prisoners in the courtroom to be restrained and determined that it was appropriate to restrain Mr. Carbajal for the reasons already noted.  When Mr. Carbajal asked the Court to allow a three-point restraint before the start of opening statements, the Court allowed

it.  The Court therefore rejects Mr. Carbajal's argument that he is entitled to a new trial on the basis that the Court delegated the decision to restrain Mr. Carbajal during trial.

### B.  Verdict in Favor of Mr. Torrez

Mr. Carbajal claims that a "new trial is warranted because the jury's verdict in favor of Defendant Torrez was against the weight of the evidence." *Id.* at 10.  Under Tenth Circuit precedent, "[w]here a motion for new trial asserts that the jury's verdict is not supported by the evidence, the court considers the evidence in the light most favorable to the prevailing party and allows the verdict to stand unless it is clearly against the weight of evidence." *Ellsworth v. Tuttle*, 148 F. App'x 653, 669-70 (10th Cir. 2005) (unpublished).

Mr. Carbajal appears to argue that the jury's verdict in favor of Mr. Torrez was against the weight of evidence because Mr. Carbajal "took great care to articulate in his testimony" his allegations against Mr. Torrez, but Mr. Torrez did not testify, and no evidence was introduced negating Mr. Torrez's liability.  Docket No. 340 at 10-11. Defendants argue that "[t]he fact that Mr. Torrez did not present contradictory testimony rebutting Mr. Carbajal's serial falsehoods, or specifically present evidence in response to Mr. Carbajal's claims (because of his death) is of no moment, as he was not obligated or required to do so.  The jury considered and evaluated Plaintiff's credibility and simply wasn't buying what he was selling.  Mr. Carbajal had and retained at all times the burden of proving his claim and he failed to meet this burden."  Docket No. 361 at 7.

While it is true that Mr. Torrez did not testify, Mr. Carbajal, not Mr. Torrez, had the burden of proof.  The preliminary instruction that the Court read to the jury at the

beginning of the case stated that the "defendants are not required to introduce any evidence or to call any witnesses in order to defend against the plaintiff's claim."  Docket No. 280 at 6.  Whether Mr. Carbajal's testimony, or that of his mother, regarding Mr. Torrez's alleged failure to protect him from attack was credible is not for the Court to decide.  The jury was the trier of fact in this case, and after hearing all the facts presented by Mr. Carbajal and defendants, the jury was free to assess the credibility of the witnesses and weigh it accordingly.  *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999).  Viewing the evidence in Mr. Torrez's favor, the Court finds that the jury's verdict regarding Mr. Torrez was not clearly, decidedly, or overwhelmingly against the weight of the evidence with no basis in fact.  The Court will not grant a new trial on this ground.

**C.  Jurisdiction to Enter Final Judgment in Favor of Mr. Torrez**

Mr. Carbajal argues that the Court erred when it entered judgment in favor of Mr. Torrez after the trial on August 7, 2024 because the death of Mr. Torrez "divested the Trial Court of subject matter and personal jurisdiction," rendering the judgment "void for lack of jurisdiction."  Docket No. 340 at 11-12.  However, Mr. Carbajal cites no controlling authority in support of this proposition.[6]  *Id.*

The Court had subject matter jurisdiction over Mr. Carbajal's claim against Mr. Torrez, even after the death of Mr. Torrez.  Subject matter jurisdiction does not necessarily end with the death of a party, as evidenced by courts issuing decisions *nunc*

---

[6] The cases cited by Mr. Carbajal apply to Nebraska, Ohio, and New Mexico state law provisions and are therefore not applicable.  *See Anderson v. Finkle*, 896 N.W.2d 606, 610 (Neb. 2017); *Fox v. Nick*, 660 N.W.2d 881, 884-85 (Neb. 2003); *Smith v. Ralph*, 248 N.E.2d 208, 208-09 (Ohio Ct. App. 1969); *A.J. Armstrong Co. v. Hufstedler*, 405 P.2d 411, 412 (N.M. 1965).

*pro tunc* upon the death of a party.  *See, e.g.*, *Mitchell v. Overman*, 103 U.S. 62 (1880); *Weil v. Markowitz*, 898 F.2d 198, 201 (D.C. Cir. 1990) (discussing the applicability of *nunc pro tunc* relief and noting that "[t]he paradigm case involves a party who has died after his case has been submitted to the court").

For personal jurisdiction, the Court looks to the law of the individual's domicile in in order to assess a party's capacity to be sued.  *See* Fed. R. Civ. 17(b); *Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004).  The Colorado Supreme Court has held that a court cannot exercise personal jurisdiction over a dead person.  *See Currier v. Sutherland*, 218 P.3d. 709, 714-715 (Colo. 2009).  However, the reasoning in *Currier* focused on the fact that the court could not exercise personal jurisdiction because "fair and adequate notice cannot be given to a deceased defendant."  *Id.* at 715.  Unlike in *Currier*, where the defendant was already dead when the plaintiffs attempted to effectuate service of process, Mr. Carbajal properly served Mr. Torrez, and Mr. Torrez was alive and aware of the nature of the proceedings against him up until his death on the penultimate day of the trial.  The Court therefore believes it was proper to continue to exercise jurisdiction.  Furthermore, both parties agreed that Mr. Carbajal's claim against Mr. Torrez survived Mr. Torrez's death.  Had the jury found Mr. Torrez liable, Mr. Carbajal presumably would have sought to substitute the estate of Mr. Torrez under Federal Rule of Civil Procedure 25(a)(1), and the Court would likely have had personal jurisdiction over the estate.  Therefore, it was also in the interest of judicial economy that the Court proceeded with the last day of the trial and submitted the case to the jury.

In the alternative, even if the Court assumes that it lacked jurisdiction, it would not grant a new trial to Mr. Carbajal.  To be entitled to a new trial, a party must show

prejudice.  *See Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1216-1217 (10th Cir. 2008) (holding that a new trial should not be granted, even when a district court abuses its discretion, unless the error was prejudicial and affected the party's substantial rights). Mr. Carbajal fails to show that he suffered any prejudice from the jury resolving his claim against Mr. Torrez.  Mr. Carbajal did not call Mr. Torrez as a witness during his case-in-chief.  And, upon learning of Mr. Torrez's death, Mr. Carbajal did not indicate that he had planned to call Mr. Torrez as part of his rebuttal case.[7]

Moreover, Mr. Carbajal waived his right to request a new trial on the basis that the Court lacked jurisdiction over his claim against Mr. Torrez because Mr. Carbajal failed to raise that argument at trial.  "It is well-settled that motions for new trials cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Matthews v. C.E.C. Industries Corp.*, 202 F.3d 282, 1999 WL 1244491, at *9 (10th Cir. 1999) (unpublished table decision); *see also Bond v. Bd. of Cnty. Comm'rs of Muskogee*, 2023 WL 3589081, at *1-7 (10th Cir. 2023); 11 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2805 (3d ed., 2024 rev.) ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result.").  Defendants filed the notice of Mr. Torrez's death on Friday, August 2, 2024.  Docket No. 317 at 1.  When trial resumed on Monday, August 5, 2024, Mr. Carbajal did not object to the Court's jurisdiction over the claim against Mr. Torrez.  While Mr. Carbajal did seek to substitute Mr. Torrez's estate for Mr. Torrez, he

---

[7] Mr. Carbajal did not call any of the defendants as witnesses during either his case-in-chief or his rebuttal case.

did not object to proceeding with the remainder of the trial on his claim against Mr. Torrez.  Therefore, the Court deems Mr. Carbajal's jurisdictional arguments to be waived and will not grant a new trial on this ground.

### D.  Indirect Evidence of Mr. Torrez's Death

Mr. Carbajal argues that the Court "effectively corrupted the fairness of proceeding by allowing a verdict to be entered against a decedent and signaling to the jury that Blas Torrez had died by excluding him from punitive damages."  Docket No. 340 at 12.  He claims that "the jury presumably has constructive notice of Colorado laws and by extension recognized that [Mr.] Torrez was deceased due to the absence of an option for punitive damages."  *Id.* at 4.  This argument fails.  Mr. Carbajal's assertion that the jury deduced that Mr. Torrez had died because Mr. Torrez's name was not included in the paragraphs of the verdict form concerning punitive damages is mere conjecture.  There is no reason to believe that, if the jurors noticed that Mr. Torrez's name was not included in the portions of the verdict form awarding punitive damages, they would have concluded that he had died.  Furthermore, the verdict form instructed the jury to skip the paragraphs of the form concerning compensatory and punitive damages if the jury found that none of the defendants were liable.  Docket No. 324 at 2-3.  The jury did not find that any of the defendants were liable, and therefore it is likely that the jury skipped over the punitive damages paragraphs.  The Court rejects Mr. Carbajal's argument.

### E.  Statements Concerning Prior Lawsuits, Length of Sentence, Prior Offenses, and Sex Offense

Mr. Carbajal argues that the "use of his prior lawsuits, length of sentence, and prior offenses, including a false conviction for a sex offense . . . violated fundamental

fairness of Due Process and was clearly inadmissible."  Docket No. 340 at 9.  Mr.

Carbajal claims that the presentation of this information "caused the jury to perceive Mr.

Carbajal as unworthy of being protected from gang violence – a natural environment for

violent individual, so that whatever failure to protect was probably necessary, and not

unreasonable."  *Id.*

### 1.  *Prior Lawsuits*

First, Mr. Carbajal asserts that the jury should not have heard about the prior

lawsuits that Mr. Carbajal has filed in various courts.  *Id.* at 4.  Defense counsel

mentioned Mr. Carbajal's prior lawsuits on three occasions during the trial.  First, during

his opening statement, defense counsel said that Mr. Carbajal had brought at least 15

other federal lawsuits, none of which had been successful.  Second, during his cross-

examination of Mr. Carbajal in Mr. Carbajal's case-in-chief, defense counsel noted Mr.

Carbajal's prior testimony about working in a paralegal-like role and asked if it was true

that Mr. Carbajal had filed more than 15 federal lawsuits, as well as several lawsuits in

state court.  Plaintiff's counsel objected to the line of questioning on the grounds of

relevance and improper impeachment, but the Court overruled the objections.  Third,

defendants said during their closing argument that Mr. Carbajal was planning to add the

present case to his resume of lawsuits.  Plaintiff's counsel objected to this statement as

referring to facts not in evidence, but the Court overruled the objection, finding the

statement to be permissible argument.

Mr. Carbajal cites no authority in support of the proposition that a party's due

process rights are violated when a jury receives information regarding the number of

lawsuits a plaintiff has previously filed, and the Court is aware of none.  Further, the

Court explained to the jury both in its preliminary instructions, and its final instructions, Docket No. 320 at 2, that statements and arguments of counsel are not evidence. The Court will not grant a new trial on this ground.

### 2. Length of Sentence

Second, Mr. Carbajal asserts that the jury should not have heard about the length of his prison sentence. Docket No. 340 at 4. During their opening statement, defendants said that Mr. Carbajal was currently serving a 46-year sentence with the Colorado Department of Corrections. Plaintiff did not object to this statement. And, as previously discussed, the Court instructed the jury that statements by counsel, including opening statements, were not evidence. In fact, the only evidence introduced during the trial regarding the length of Mr. Carbajal's sentence came from Mr. Carbajal himself. On direct examination during his case-in-chief, Mr. Carbajal testified that he could be released from prison within a year or less.

There was no evidence of the length of Mr. Carbajal's sentence other than Mr. Carbajal's testimony that he would be released within a year or two. Mr. Carbajal fails to show any violation of his due process rights or any prejudice. The Court will not grant a new trial on this ground.

### 3. Prior Offenses

Third, Mr. Carbajal asserts that the jury should not have heard about his prior offenses. Docket No. 340 at 4. During his opening statement, defense counsel told the jury that it would hear evidence bearing on Mr. Carbajal's credibility, potentially including information regarding the crimes for which Mr. Carbajal was imprisoned and regarding his prison disciplinary record. Plaintiff's counsel objected to this statement, but the

Court overruled the objection, as no offense had been specifically mentioned.  On the second day of the trial, defendants attempted to impeach Mr. Carbajal based on a previous adjudication.  However, instead of impeaching Mr. Carbajal with a prior criminal conviction, defendants tried to impeach Mr. Carbajal with a prison disciplinary violation.  The Court sustained plaintiff's objection to this impeachment attempt.  Defendants did not attempt to impeach Mr. Carbajal with any criminal conviction.  The Court finds that Mr. Carbajal has not shown any prejudice from the jury hearing about his criminal history, and the Court will not grant a new trial on this ground.

### 4.  Evidence of a Prior Sex Offense

Fourth, Mr. Carbajal asserts that he suffered prejudice from the introduction of false evidence of a prior sex offense.  Docket No. 340 at 4.  Although Mr. Carbajal cites caselaw in support of the argument that evidence of a party's prior conviction for a sex offense may be prejudicial, *see* Docket No. 340 at 9, that is not what occurred at trial.  On the third day of trial, Ms. Jessica Gossett testified that, during a meeting in August 2017, Mr. Carbajal told her that other prisoners believed that he was a sex offender.  Mr. Carbajal objected to this testimony.  The Court sustained the objection and instructed the jury to disregard the testimony.  In addition, the Court gave Mr. Carbajal the opportunity to enter evidence or a stipulation indicating that Mr. Carbajal has not been convicted of a sex offense.  The parties jointly introduced the following stipulation:

> 1. The Plaintiff, Mr. Dean Carbajal is not a sex offender; and
> 2. The Plaintiff, Mr. Dean Carbajal, does not have any convictions for a sexual offense.

Plaintiff's Exhibit 42.

The Tenth Circuit "recogni[zes] that 'juries are presumed to follow curative instructions,'" including in trials where a party's prior conviction was improperly introduced. *Deaton v. Farris*, 666 F. App'x 713, 716 (10th Cir. 2016) (unpublished) (quoting *United States v. Morgan*, 748 F.3d 1024, 1042 (10th Cir 2014)). Thus, even if the jury interpreted Ms. Gossett's statement that Mr. Carbajal felt that other prisoners believed he was a sex offender as a statement indicating that Mr. Carbajal had been convicted of a sex offense, the jury is presumed to have disregarded that statement.

Moreover, Mr. Carbajal offers no evidence in support of his argument that "the evidence in this case was so overwhelming against [Mr.] Torrez and others that any prejudice was obvious, because the jury refused to find them responsible for their clear failure to protect Mr. Carbajal." Docket No. 340 at 9. However, as discussed earlier, the jury's ruling in favor of Mr. Torrez was not against the weight of the evidence. The jury's ruling in favor of the other defendants was also not against the weight of the evidence for the same reasons. The Court will not grant Mr. Carbajal a new trial based on statements during trial regarding other prisoners' misperception of Mr. Carbajal as a sex offender, just as it will not grant a new trial based on the previously discussed references to Mr. Carbajal's prior lawsuits, the length of his sentence, and his prior offenses.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Amended Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50 or Alternatively Motion for New Trial Pursuant to Fed. R. Civ. P. 59 [Docket No. 340] is **DENIED**.

**ORDERED** that Plaintiff's Motion for an Extension of Time to Reply to Defendant's Response [Docket No. 366] is **DENIED** as moot.

DATED October 16, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge